ABRAHAM and others *v.* WESTERN UNION TEL. Co.

*(Circuit Court, D. Oregon.   April 8, 1885.)*

TELEGRAPH COMPANIES—BUSINESS OF—LIABILITY FOR NEGLIGENCE.
  A person engaged in the business of telegraphy, or the transmission of messages for hire by means of electricity, is a public servant, and responsible to the party injured for any loss arising from his negligence in transmitting or delivering such a message; but he is not liable as an insurer of said message against errors consequent upon causes beyond his control.

Action to Recover Damages.

*M. W. Fecheimer,* for plaintiff.

*Rufus Mallory,* for defendant.

DEADY, J.   This action is brought by the plaintiffs, citizens of Oregon, against the defendant, a corporation formed under the laws of New York, and doing business in the state of Oregon, to recover damages to the amount of $1,854, caused by the alleged negligence of the defendant in sending and receiving a message for the plaintiffs between Glendale and Roseburg, Oregon.   It is alleged in the amended complaint that on October 30, 1883, the plaintiff Walter Wheeler sent a message over defendant's telegraph line from Glendale to Roseburg, to his partners and co-plaintiffs, by the firm name of Abraham, Wheeler & Co., in these words:

"GLENDALE, OR., Oct. 30, 1883.

"*To Abraham, Wheeler & Co., Roseburg, Or.:*   "Don't sell *any* wheat; hold a few days.

[Signed]                              "WALTER WHEELER."

That the price demanded for transmitting said message was prepaid by the sender, in consideration of which the defendant undertook to deliver the same as written and addressed; that the defendant transmitted said message so negligently and unskillfully that the same was delivered to said Abraham, Wheeler & Co., at Roseburg, with the word "all" substituted for "any" in the original, in consequence of which the plaintiffs immediately sold 9,000 bushels of wheat, the same being a portion of a greater quantity they then had on hand, at 97½ cents per bushel, that being the market price at Roseburg therefor; but that thereafter, and on November 1, 1883, wheat was worth at that place $1.23½ cents per bushel; and that it was the intention of said Wheeler in sending said message to have the plaintiffs hold said wheat for a time, and thereby receive the advance thereon,

and the plaintiffs would have done so, and thereby realized said advance, if said message had been truly delivered.

By the amended answer the defendant denies:

(1) Negligence in transmitting or delivering the message. (2) That the plaintiffs sold said wheat on account or by reason of the information or advice contained in said message as received by them, and avers that such sale was in fact contrary thereto. (3) That on November 1, 1883, wheat was worth at Roseburg $1.23½ per bushel, or any more than 81 cents per bushel. (4) Knowledge as to the intention of said Wheeler in sending said message, or as to whether the plaintiffs would have realized any greater price for said wheat if said message had been duly delivered. (5) That the plaintiffs were damaged in the sum of $1,854, or at all, by the negligence of the defendant in sending or receiving said message. And also sets up a special defense to the effect that the error in sending the message was the result of natural causes beyond the control of the defendant.

The answer also contains a statement intended either as a defense to the action, or in mitigation of the damages claimed therein, that the message in question was received and transmitted by the defendant on the condition, and subject to the agreement, that it should not be liable for any mistake in the transmission or delivery of the same, whether caused by the negligence of the defendant or otherwise, beyond the amount paid for sending the same, unless it was repeated; and that the plaintiffs did not have said message repeated, whereby they assumed the risk of any mistake occurring in the transmission thereof. To this statement or plea the plaintiffs demur, for that it does not constitute a defense in whole or in part to the action, which is for damages caused by the negligence of the defendant.

Electricity has been in successful use as a means of transmitting messages and information for about 40 years. During this time the responsibility of the person who undertakes to serve the public in this way, and the nature of his employment, have been the subject of much consideration and some conflicting judgments in the courts. With the progress of time and the marked improvements in the science of telegraphy, there has been a tendency to hold telegraph companies to a higher degree of diligence and a larger measure of responsibility in the discharge of their duties to their employers. From the first an effort was made to liken the business of telegraphy to the carriage of goods by a common carrier. But the courts, with but probably one exception, (*Parks* v. *Alta Cal. Tel. Co.* 13 Cal. 422,) have declined to hold the telegrapher responsible as an insurer of the accuracy of messages transmitted by him, and have limited his liability to losses arising from mistakes resulting from his negligence in the discharge of the duties of his employment.

The liability of a common carrier is twofold. The one arises from the fact that he is an insurer of the safety of the goods committed to his custody against loss from all danger or accident, except the act of God and the public enemy; and the other from the fact that he is a bailee of such goods, and as such responsible for any loss or injury

thereto consequent upon his own negligence. And the weight of authority is that he may, by contract, restrict his liability as an insurer, but not as a bailee. Care and diligence are the essential duties of his employment in this respect, and it would be contrary to public policy to allow him to contract for less, or to limit his responsibility for his own negligence.

And although a telegrapher is not an insurer, and therefore not responsible for an error in a message consequent on causes beyond his control, he is, like a common carrier, a servant of the public by reason of his employment, and bound to the exercise of care and diligence adequate to the discharge of the duties thereof, and cannot by any notice, regulation, or contract limit or control his liability for the negligence of himself or servants. As was said by Mr. Justice STRONG in *Express Co.* v. *Caldwell*, 21 Wall. 269:

"Telegraph companies, though not common carriers, are engaged in a business that is in its nature almost, if not quite, as important to the public as that of carriers. Like common carriers, they cannot contract with their employers for exemption from liability for the consequences of their own negligence."

By section 17 of the act of October 17, 1862, (Laws Or. 776,) it is provided that a telegraph company doing business in this state must transmit all messages in the order in which they are received, with certain exceptions of public interest, under a penalty of $100. This act is a recognition, as well as a declaration, of the fact that the employment of the defendant is a public one, "to be carried on," as was said by BIGELOW, J., in *Ellis* v. *American Tel. Co.* 13 Allen, 231, "with a view to the general benefit and for the accommodation of the community, and not merely for private emolument and advantage." And the measure of damages in an action against the defendant for a failure to perform a duty pertaining to this employment with due care and diligence is the ordinary one in actions for damages caused by a neglect of duty. Any stipulation or notice limiting the defendant's liability in this respect is void and of no effect. Notwithstanding the contract or condition under which this message is alleged to have been sent by the plaintiff, if the error in its transmission was consequent upon the negligence of the defendant, or the want of ordinary care and prudence on the part of its servants, it is liable to the plaintiffs for the damage sustained thereby. And this includes gains prevented as well as losses sustained, provided they are the natural and proximate consequence of the error or mistake.

In the case of an obscure or cipher message, of which the import or importance is not apparent to the operator, there is a conflict of authority as to whether or not the damages should be limited to the price of the message. *Candee* v. *W. U. Tel. Co.* 34 Wis. 479; *Hart* v. *Same*, 4 Pac. Rep. 658.

But the case under consideration is one in which the message, by its terms, informed the defendant of its import and importance, and

the measure of damages for a breach of the undertaking to transmit it with care and diligence is the ordinary one. It follows that the matter demurred to neither constitutes a defense to the action nor a mitigation of the damages sought to be recovered thereby, and therefore the demurrer must be sustained; and it is so ordered.

In addition to the authorities above cited, the following cases have been examined, and are referred to as bearing on the question involved in this cause from various stand-points: *Railroad Co.* v. *Lockwood,* 17 Wall. 357; *Jones* v. *Voorhees,* 10 Ohio, 145; *True* v. *International Tel. Co.* 60 Me. 9; *Bartlett* v. *W. U. Tel. Co.* 62 Me. 209; *Redpath* v. *Same,* 112 Mass. 71; *Grinnell* v. *Same,* 113 Mass. 299; *New York & W. P. Tel. Co.* v. *Dryburg,* 35 Pa. St. 298; *Passmore* v. *W. U. Tel. Co.* 78 Pa. St. 238; *Telegraph Co.* v. *Griswold,* 37 Ohio St. 301; *Breese* v. *U. S. Tel. Co.* 48 N. Y. 132; *Wann* v. *W. U. Tel. Co.* 37 Mo. 472; *W. U. Tel. Co.* v. *Fenton,* 52 Ind. 1; *White* v. *W. U. Tel. Co.* 14 Fed. Rep. 710, and note, 718.