**Norman I. SUCHOMAJCZ et al.**

v.

**UNITED STATES of America.**

Civ. A. No. 71–1832.

United States District Court,
E. D. Pennsylvania.

Jan. 29, 1979.

William J. McGettigan, Asst. U. S. Atty., Philadelphia, Pa., for plaintiffs.

Joseph Lurie, Philadelphia, Pa., for defendant.

## OPINION

DITTER, District Judge.

This is a suit under the Federal Tort Claims Act. Claimants contend their children were injured because the government negligently permitted the mails to be used for the delivery of a highly dangerous substance. Unresolved questions of material facts affecting the nature and scope of the government's responsibility require its present motion for summary judgment to be denied.

Plaintiffs' complaint seeks damages from the United States on behalf of the guardians and personal representatives of six minors who suffered serious burns on July 6, 1970, when one of them ignited a flammable powder left on the street. Two children died. The powder was part of a shipment mailed to another minor, Gregory Kranyak, through a mail order business run by Edwin C. Christie, doing business under the names Ecco Products, Christie Industries, Rocket Supply Co., and Rocfuel Ltd. (Christie). Christie manufactured and shipped firecracker assembly kits in violation of the Child Protection Act of 1966, 15 U.S.C. § 1261 et seq., even though the government had obtained several injunctions against him prior to the date of the children's injuries.[1] Due to Christie's flagrant disregard of both federal law and the injunctions, the government had prosecuted Christie in 1968 and 1970 for contempt.

---

1. The preliminary injunction entered by the United States District Court for the District of New Jersey restrained Christie from "preparing, packaging, promoting, selling, distributing, introducing, and causing to be introduced, and delivering and causing to be delivered for introduction into interstate commerce" certain fireworks assembly kits.

Parts of plaintiffs' claim pertinent to this motion include the contention that the United States, acting through the post office, was negligent by:

(1) Accepting for delivery packages from Christie knowing that they were being forwarded to children and that their contents might well be used by the recipients to endanger themselves, other children, and members of the public, and

(2) Failing to exercise the inherent right to impound mail directed to Christie when doing so would have prevented the receipt of orders for explosives and fireworks, and thereby safeguarded children and the public from the danger arising out of the use, misuse, and abuse of fireworks.

■ Through the Federal Torts Claim Act (FTCA), 28 U.S.C. § 1346, the United States, with certain limited exceptions, relinquished its sovereign immunity from suit. One such exception, 28 U.S.C. § 2680(b), concerns postal activities and provides that suit cannot be brought for "Any claim arising out of the loss, miscarriage, or negligent transmission of letters or postal matters." As the government states in its brief, there is no case law interpreting the postal exception in the context of negligent transmission of mail matter. Defendant's Brief at 14. Still, the defendant submits that "*on its face*, the postal exception precludes recovery by plaintiffs." However, an examination of the legislative history and Congressional intent behind the postal exception reveals that plaintiff's claim is not barred. As pointed out by Judge Weinstein from the Eastern District of New York, "Congress was concerned with shielding the courts from the potential landslide of lawsuits that might be generated by the unavoidable mishaps incident to the ordinary, accepted operations of delivering millions of packages and letters each year." *Birnbaum v. U. S.*, 436 F.Supp. 967, 974 (E.D.N.Y. 1977). A Justice Department official explained the rational behind the postal exception:

> Every person who sends a piece of postal matter can protect himself by registering it, as provided by the postal laws and

regulations. It would be intolerable, of course, if in any case of loss or delay, the government could be sued for damages. Consequently, this provision was inserted.

Hearings before the Senate Committee on the Judiciary on S. 2690, 76th Cong. 3d Sess. 38 (1940) (testimony of A. Holtzoff, Special Assistant to Attorney General of the United States).

In previous testimony Mr. Holtzoff had commented that the theory behind the exceptions was to "exempt certain tort claims that would be difficult to defend, or in respect to which it would be unjust to make the government liable." *Id.* at 22.

None of the reasons suggested by the legislative history is applicable here. The plaintiffs do not present a claim for "which it would be unjust to make the government liable," nor one which the government would find "difficult to defend" by reason of unavailability of proofs or evidence. This case will not lead to the landslide of litigation against the government which Congress desired to avoid. Finally, while postal patrons may protect themselves against negligent handling of the mails through insuring or registering their packages or letters, such protection was obviously not applicable to the injured persons in this case.

An analysis of cases arising out of the "negligent transmission" of telegraph messages helps in the understanding of that term in the postal exception to FTCA. Typically, the negligent transmission of telegraph messages involved the inadvertent substitution of words which changed the meaning of the transcribed message between sender and receiver. *White v. Western Union Telegraph*, 14 F. 710, 5 McCrary 103 (C.C.Kan.1882); *Abraham v. Western Union Telegraph Co.*, 23 F. 315 (C.C.Or. 1885). Carrying this analysis over to the post office, negligent transmission becomes the alteration or injury to the package or letter while in transit. The plaintiffs' claim does not allege negligence by the post office in the transmission, but negligence by the post office in failing to stop mailings alto-

gether to and from Christie. Such a claim is not precluded under 28 U.S.C. § 2680(b).[2]

Even if I were to find that negligent transmission encompasses certain failures by the Post Office to refuse non-mailable packages, the transmission of the fireworks kit from Christie to Gregory Kranyak was *intentional* rather than negligent. The Post Office had every intention to continue deliveries to and from Christie despite his continued violations. If the government had prohibited such deliveries and the Post Office had accidentally forwarded a package, perhaps then the transmission would be found to be negligent. However, the government fails to contend that the Post Office denied Christie standard service. Consequently, the delivery of the fireworks resulting in the explosion cannot be deemed a negligent transmission within 28 U.S.C. § 2680(b).

■ The alleged negligence of the United States, once its capacity to be sued is determined, resolves around the question of duty: did the government owe a duty to these particular plaintiffs to stop Christie from transmitting firecracker kits, knowing that Christie was continuing to do so in violation of an injunction previously obtained against him? The FTCA calls for the application of the law of the place where the act or omission complained of occurred. 28 U.S.C. § 1346(b). That law includes both substantive and choice of law rules. It is not clear from the plaintiffs' amended complaint whether the acts or omissions complained of occurred in Tappan, New York, where Christie allegedly mailed his packages, or in Pennsylvania, where the mail order request was placed and the fireworks kit received. However, because New York and Pennsylvania have identical choice of law rules, under either jurisdiction, Pennsylvania law applies. See *Babcock v. Jackson*, 12 N.Y.2d 473, 240 N.Y.S.2d 743, 191 N.E.2d 279 (1963); *Griffith v. United Air*

*Lines, Inc.*, 416 Pa. 1, 21, 203 A.2d 796, 805 (1964).

In defining the government's duty under the FTCA, 28 U.S.C. § 2674 states that:

The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private person under like circumstances . . .

The Third Circuit's decision in *Suchomajcz v. Hummel Chemical Company*, 524 F.2d 19 (3d Cir. 1975), concerning the same set of events provides guidance in determining the extent of the government's duty in this particular case. There it was alleged that Hummel sold harmless, ordinary chemicals to Christie, knowing that Christie would use them to manufacture fireworks assembly kits contrary to law and in violation of an injunction. The court held that a motion to dismiss Hummel had been improperly granted. Consideration of liability in the present case merely involves the substitution of the government in its role as negligent carrier in place of Hummel as negligent supplier.

The Court of Appeals enunciated two duties owed by Hummel to the plaintiffs; the initial duty "rests on the responsibility each person bears to exercise reasonable care in his conduct to avoid unreasonable risk of harm to another", while the second duty relates to Hummel's being the manufacturer of a potentially dangerous substance. Ignoring the court's analysis of the latter duty, the holding as to the former remains pertinent to the claim of negligence against the government.

■ As a general rule, "anyone who does an affirmative act is under a duty to others to exercise the care of a reasonable man to protect them against an unreasonable harm to them arising out of the act." *Restatement (Second) of Torts* § 302, comment a at 82 (1965) [hereinafter cited as

---

**2.** The Court takes note that "an exemption or exception which saves or reserves a part of the immunity of the United States from complete surrender should be liberally construed in favor of the government." Annot., 6 L.Ed.2d 1422, 1425 (1962). However, since the interpretation of 28 U.S.C. § 2680(b) rendered in this case does not destroy governmental immunity, but merely defines and limits it, this court acts within the accepted rules of construction governing the FTCA.

*Restatement*]. Section 302(b) defines a negligent act or omission as one "which involves an unreasonable risk of harm to another through . . . the foreseeable action of . . . a third person." The Third Circuit recognizes Section 302(b) as an accurate statement of Pennsylvania law. See *Suchomajcz*, supra; *Smith v. Hobart Mfg. Co.*, 302 F.2d 570 (3d Cir. 1962).

Section 302(b) requires two factors to come into play before an act may be found to be negligent. First, the risk of harm created by the act must be unreasonable. If the magnitude of the risk of harm outweighs the social utility of the act, then the risk is unreasonable and the act negligent. See *Restatement* § 291. The acceptance of packages by the post office determined to be "non-mailable" under its own regulations had no social utility.[3] See *Restatement* § 292. The public service advanced by the post office does not insulate the government from liability when balanced against the magnitude of the risk incurred by the public when dangerous materials are shipped through the mails. See *Restatement* § 293. Mail service to the public would not have suffered by the post office's refusal to continue deliveries to and from Christie.

Section 302(b) also requires that the act of the third party be foreseeable. Suits against Christie for violation of a court injunction evidence the government's knowledge of his continued mail order business. Consequently, guided by the Third Circuit's analysis of Section 302(b) in *Suchomajcz*, supra, I conclude that the government may sustain liability where it continues postal service to one whom it knows uses its services for illegal purposes, resulting in injuries and death to others. Whether the government discharged its duty to the plaintiffs by prosecuting Christie for contempt remains a question for the jury to decide.

Finally, the government argues that the shipment to Gregory Kranyak which result-

ed in injuries to the plaintiffs did not violate the injunction since it contained only explosive powders and did not include casings, fuses or end caps. It is true that on appeal from Christie's criminal conviction, the Court of Appeals held that shipment of component firecracker parts was not covered by the injunction. *United States v. Christie Industries*, 465 F.2d 1002, 1007 (3d Cir. 1972). It does not necessarily follow however, that the government was discharged from all duty merely because the injunction was not violated by the particular shipment in question. Rather this question should be left for the jury. Cf. *Suchomajcz v. Hummel Chemical Co.*, 524 F.2d 19 (3d Cir. 1975).

---

3. On March 29, 1966, Edwin A. Riley, Director of the Classification and Special Service Division, U.S. Postal Service, ruled that based on

§ 124.2 of the Post Manual, the powdered metal used in Christie's products was non-mailable. (Defendant's Supplemental Brief at 3).