Ann L. ROBINSON and Curtis V. Cooper, as Permanent Administrator of The Estate of Robert E. Robinson, Deceased, Plaintiffs,

v.

The UNITED STATES of America, Defendant.

No. CV 493–216.

United States District Court, S.D. Georgia, Savannah Division.

March 29, 1994.

Lester Benjamin Johnson, III, Lester B. Johnson III, P.C., Savannah, GA, for plaintiffs.

Lisa S. Goldfluss, Trial Atty., Civil Div., U.S. Dept. of Justice, Washington, DC, for defendant.

### ORDER

EDENFIELD, Chief Judge.

Before the Court is the Defendant's Rule 12(b)(1) motion to dismiss. For the reasons discussed herein, the Defendant's motion is **GRANTED.**

### FACTS

This case arises out of a mail bomb incident. On December 18, 1989, the United States Postal Service delivered a package to Robert E. Robinson that was allegedly wrapped with string and mailed by Walter Leroy Moody, Jr. The package contained a bomb that exploded and killed Mr. Robinson.

The Plaintiffs brought this action under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671–2680 ("FTCA"), asserting that the Postal Service "negligently delivered a package enclosed with string in violation of the Domestic Mail Manual." (Compl. at ¶ 5.) They contend that the package should have been rejected as "non-mailable matter in that it was undesirable, harmful, and dangerous," (Compl. at ¶ 6); "improperly packaged," (Compl. at ¶ 7); and "packaged in a way that could harm employees, equipment and/or other mail," (Compl. at ¶ 8). The Defendant asserts that the Court lacks subject matter jurisdiction over this case because it falls within two exceptions to the FTCA's waiver of sovereign immunity.

### ANALYSIS

#### 1. Motion to Dismiss: Rule 12(b)(1)

■ This court, like all federal courts, is a court of limited subject matter jurisdiction. U.S. Const. art. 3, section 2. It is axiomatic that if the Court lacks subject matter jurisdiction over a case, the Court must dismiss it. A 12(b)(1) motion challenges the district court's subject matter jurisdiction. *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir.1990) (citing *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir.1980), *cert. denied*, 449 U.S. 953, 101 S.Ct. 358, 66 L.Ed.2d 217 (1980)).

■ The Rule 12(b)(1) challenge affords a plaintiff safeguards similar to those provided on a Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted. In essence, a defendant who mounts a 12(b)(1) attack says, "Even if everything you allege is true, the court does not have subject matter jurisdiction over this action." Consequently, in determining the merits of a 12(b)(1) motion, the court must read the Complaint in a light most favorable to the plaintiff and accept all factual allegations as true. *United States v. Gaubert*, 499 U.S. 315, 327, 111 S.Ct. 1267, 1276, 113 L.Ed.2d 335 (1991). The burden of establishing sub-

ject matter jurisdiction in this case lies with the plaintiff.

### 2. The Defendant's Motion

■ Under the principle of sovereign immunity, the United States cannot be sued for damages unless it consents to be sued, *Powers v. U.S.*, 996 F.2d 1121, 1123–24 (11th Cir.1993), and then, the terms of the Government's consent define the court's jurisdiction over the case. *Lehman v. Nakshian*, 453 U.S. 156, 160, 101 S.Ct. 2698, 2701, 69 L.Ed.2d 548 (1981). The FTCA sets forth the government's consent to be sued for the negligent conduct of its employees "in the same manner and to the same extent as a private individual under like circumstances." *Howell v. United States*, 932 F.2d 915, 917 (11th Cir.1991) (citations omitted).

■ The consent contained in the FTCA is limited, however, and Congress has expressly provided for exceptions to the FTCA's waiver of sovereign immunity. 28 U.S.C. § 2680(a)–(n); *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 808, 104 S.Ct. 2755, 2762, 81 L.Ed.2d 660 (1984). These exceptions are construed in favor of the sovereign. *United States v. Nordic Village, Inc.*, — U.S. —, — – —, 112 S.Ct. 1011, 1014–16, 117 L.Ed.2d 181 (1992).

The Defendant has moved to dismiss this case on the grounds that it falls within two of the FTCA's enumerated exceptions. First, the Defendant contends that the action is jurisdictionally barred by 28 U.S.C. § 2680(b), which precludes tort claims for money damages against the United States "arising out of the ... negligent transmission of letters or postal matter." Second, the Defendant asserts that the Plaintiffs' action falls within 28 U.S.C. § 2680(a), the discretionary function exception to the FTCA.

### a. Negligent Transmission: 28 U.S.C. Section 2680(b)

■ Section 2680(b) provides that FTCA liability does not extend to "[a]ny claim arising out of the loss, miscarriage, or negligent transmission of letters or postal matter." 28 U.S.C. § 2680(b). This exception has nor-

mally been raised in situations, unlike the one here, where postal matter was damaged, lost, or misdelivered by Postal Service employees. The Parties have not cited, and the Court has not uncovered, any case in which the victim of a mail bombing has attempted to hold the U.S. Postal Service liable in tort. Whether Section 2680(b) applies in a situation such as the present, therefore, is an issue of first impression.

The Supreme Court has noted that the "proper objective of a court attempting to construe one of the subsections of 28 U.S.C. § 2680 is to identify 'those circumstances which are within the words and reason of the exception'—no less and no more." *Kosak v. United States*, 465 U.S. 848, 853–54 n. 9, 104 S.Ct. 1519, 1524 n. 9, 79 L.Ed.2d 860 (1984) (quoting *Dalehite*, 346 U.S. 15, 31, 73 S.Ct. 956, 965, 97 L.Ed. 1427 (1953)). Thus, the Court's inquiry focuses on the words of Section 2680(b) and reasons underlying it.

The Court begins by examining the language of the exception. Since this case plainly does not involve loss or miscarriage of mail, the Court will not address itself to those terms. The pivotal language for this case is "[a]ny claim arising out of ... negligent transmission of letters or postal matter." 28 U.S.C. § 2680(b). "Negligent transmission" is not defined by statute or binding case law. Absent such a definition, the Court examines the plain meaning of the words. "[W]e assume 'that the legislative purpose is expressed by the ordinary meaning of the words used.'" *Kosak*, 465 U.S. at 853, 104 S.Ct. at 1523 (citations omitted) (construing 28 U.S.C. § 2680(c)).

At first blush, the words appear to be broad enough to protect the Postal Service in this case. The prelude "any claim arising out of" is certainly expansive. *See, id.*, 465 U.S. at 854, 104 S.Ct. at 1523. This expansive prelude evinces a legislative intent to broaden as opposed to limit the terms that the prelude serves, namely for the purpose of this case, "negligent transmission."

■ "Negligent transmission" is best defined in parts. "Negligent" is a legal term of art involving duty, breach of duty, causation and damages. The definition of that term is

not in serious dispute here. "Transmission" normally means the "act, process or instance of transmitting" and "transmit" means "to send or convey from one person or place to another." WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY at 1254. Logically, in a postal context, transmission would begin when a postal patron deposits postal matter with the Postal Service and would end when the postal matter was delivered by the Postal Service to a third-party. Those are the acts that define the "process" of "convey[ing the postal matter] from one person or place to another." *Id.* Thus, the plain meaning of the words indicate that this exception would cover acts of negligence by Postal Service employees regarding postal matter beginning when the postal matter was accepted by the Postal Service and ending when it was delivered.

The above definition comports with the major reasons underlying the exceptions to the FTCA generally and Section 2680(b) in particular. Two of the principal rationales for the exceptions to the FTCA are to ensure that " 'certain governmental activities' not be disrupted by the threat of damage suits" and to avoid exposure of the United States to liability for excessive or fraudulent claims. *Kosak*, 465 U.S. at 858, 104 S.Ct. at 1526 (citations and legislative history omitted). The Postal Service is charged with the handling of an enormous amount of mail each day. Efficiency, both in terms of speed and cost control, is imperative to the success of their mission. Congress created the exception in question to allow the Postal Service to initiate procedures to maximize efficiency without exposure to liability. Absent such protection, the Service would have to incur considerable expense, in terms of time, effort, and money, to address potential liability. For example, the Postal Service would probably have to open each letter and package and inspect its contents to determine if those contents were safe. Obviously, the process

would take much more time and money. In the end, there would still be no guaranty that packages were safe—the criminal mind knows no limit to creativity. Such liability, and the delay and expense that would necessarily follow it, is the exact type of distraction that this exception was designed to guard against.

■ Notably, this exception was intended to apply to the handling of mail and postal matter alone. The exception does not shield the Postal Service from the negligence of their employees in driving postal vehicles, for example, or in performing other duties not directly involving postal matter. *Id.*, 465 U.S. at 855, 104 S.Ct. at 1524 (citing General Tort Bill: Hearing before a Subcommittee of the House Committee on Claims, 72nd Cong., 1st Sess., 17 (1931) (testimony of Attorney General Rugg)).

In this case, the Plaintiff alleges that the Defendant "negligently delivered a package enclosed with string in violation of the Domestic Mail Manual," (Compl. at ¶ 5), and that the package in question should have been rejected as "non-mailable matter," (Compl. at ¶ 6); "improperly packaged," (Compl. at ¶ 7); and "packaged in a way that could harm employees, equipment and/or other mail," (Compl. at ¶ 8). The Plaintiffs' claims boil down to nothing more than a claim for negligence in accepting a package and negligence in delivering that package.[1] As discussed above[2], acceptance and delivery fall within the "process" of "conveying [postal matter] from one person or place to another" and, thus, within the scope of "negligent transmission." Moreover, acceptance and delivery, as opposed to driving for instance, are clearly the types of conduct that this exception was designed to cover. Hence, the Plaintiffs' case constitutes a "claim arising out of . . . negligent transmission of letters or postal matter" and is, therefore, jurisdic-

---

1. The Plaintiffs alleged in their Complaint that the Postal Service "negligently delivered a package enclosed with string." (Compl. at ¶ 5.) Yet, after the Defendant filed its motion to dismiss, the Plaintiffs tried to refashion their allegation to read that the Postal Service "was negligent in failing to stop the mail altogether." (Pls.' Resp. at 4.) Interestingly, those are the words used in

*Suchomajcz v. United States*, 465 F.Supp. 474, 477 (E.D.Pa.1979). As discussed *infra*, *Suchomajcz* is nonbinding and distinguishable from the present case. Semantic variations aside, the essence of the Plaintiffs' case remains negligent acceptance and delivery of a package.

2. *See supra* pages 801–802.

tionally barred under 28 U.S.C. Section 2680(b).

The Plaintiffs argue that this case does not fall within Section 2680(b) for two reasons. The Plaintiffs first assert and rely on *Suchomajcz v. United States*, 465 F.Supp. 474 (E.D.Pa.1979), a case decided by the U.S. District Court for the Eastern District of Pennsylvania. *Suchomajcz* is the only case in which any court has defined the term "negligent transmission." In that case, the court defined the term as "... the alteration or injury to a package or letter while in transit." *Id.*, 465 F.Supp. at 476.

Reliance on that case is misdirected in that it is nonbinding on this Court, fact driven and easily distinguished from the case at hand. In *Suchomajcz*, the plaintiffs sued the Government for accepting packages for delivery by the Postal Service *knowing* that they were being forwarded to children and *knowing* that they contained dangerous explosives. *Id.* Those egregious facts, obviously distinguishable from the facts of this case where the Postal Service had no special knowledge of the content of the package in question, drove the court's reasoning. For example, the court noted that the plaintiffs' case did not present a claim for "which it would be unjust to make the government liable." *Id.* The court was also troubled by the intentional actions of the postal employees in that case. The distinguishable facts, the fact driven reasoning and the nonbinding status of *Suchomajcz* make application of its conclusions to this case inappropriate.

Additionally, the Plaintiffs argue that Section 2680(b) should not be applied to this case because it has never been applied to a mail bombing case. This argument is logically fallacious and no more persuasive than the converse argument—that the Postal Service has never been held liable under the FTCA for a mail bombing incident. In any event, as indicated *supra*, regardless of how the issues are stated, this case is essentially a negligence case involving actions and subject matter that fall squarely within the scope of Section 2680(b). Accordingly, the Court concludes that this action is a "claim arising out of the ... negligent transmission of letters or postal matter" and is thus jurisdictionally barred under 28 U.S.C. Section 2680(b). The Defendant's motion to dismiss must, therefore, be **GRANTED.**

b. *Discretionary Function: 28 U.S.C. Section 2680(a)*

■ Section 2680(a), known as the discretionary function exception, provides that the FTCA does not apply to:

> Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of ... an employee of the Government, whether or not the discretion involved is abused.

28 U.S.C. § 2680(a). This exception was first discussed by the Supreme Court in *Dalehite v. United States*, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953), and has, thereafter, been refined and reduced to a two-part inquiry. *See Powers*, 996 F.2d at 1124 (citing *United States v. Gaubert*, 499 U.S. 315, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991); *Berkovitz by Berkovitz v. United States*, 486 U.S. 531, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988); *United States v. Varig Airlines*, 467 U.S. 797, 104 S.Ct. 2755, 81 L.Ed.2d 660; *Autery v. United States*, 992 F.2d 1523 (11th Cir.1993)). First, the Court must examine the challenged conduct and inquire whether it involves "an element of judgment or choice." *Powers*, 996 F.2d at 1125 (citations omitted). Second, the Court must inquire "whether that judgment is of the kind that the discretionary function exception was designed to shield." *Gaubert*, 499 U.S. at 332, 111 S.Ct. at 1278 (citations omitted).

1. **The challenged conduct involves "an element of judgment or choice."**

■ The first inquiry is whether the challenged conduct involves "an element of judgment or choice." *Powers*, 996 F.2d at 1125 (citations omitted). If a federal statute, regulation or policy sets out a specific course of action for an employee to follow in a particular situation then the employee's conduct is

not discretionary—he or she is not free to disregard the mandate, and, if the mandate is disregarded, the discretionary function exception will not shield the Government from liability. *Gaubert*, 499 U.S. at 322, 111 S.Ct. at 1273 (quoting *Berkovitz*, 486 U.S. at 536, 108 S.Ct. at 1959). The Eleventh Circuit has expressed this inquiry in a slightly different way: " 'if a government official in performing his statutory duties must act without reliance upon a *fixed or readily ascertainable standard*, the decision he makes is discretionary and within the discretionary function exception.' " *Powers*, 996 F.2d at 1124 (quoting *Alabama Electric Cooperative, Inc. v. United States*, 769 F.2d 1523, 1529 (11th Cir.1985) (other citations omitted)).

■ This inquiry requires an analysis of the regulations applicable to the Postal Service. The basic policy statement of the Postal Service is statutorily provided:

> The Postal Service shall have as its basic function the obligation to provide postal services to bind the Nation together through the personal, educational, literary, and business correspondence of the people. It shall provides prompt, reliable and efficient services to patrons in all areas and shall render postal services to all communities.

39 U.S.C. § 101(a). Furthermore, "the Postal Service shall plan, develop, promote, and provide adequate and efficient postal services at fair and reasonable rates and fees." 39 U.S.C. § 403(a). More specifically, the Postal Service is charged with the responsibility "to maintain an efficient system of collection, sorting, and delivery of the mail nationwide." 39 U.S.C. § 403(b)(1).

Congress has provided the Postal Service with considerable discretion in carrying out its responsibilities. *See*, 39 C.F.R. § 1.1. ("the Postal Reorganization Act of August 12, 1970, Pub.L. 91–375, 84 Stat. 719, clothes [the Postal Service] with extensive powers intended to enable it to carry out its responsibilities effectively and economically"); 39 U.S.C. § 401(2) (Postal Service has "general powers," including the power to "adopt, amend, and repeal such rules and regulations as it deems necessary to accomplish the objectives of this title [39 U.S.C. §§ 101 et seq.].").

The Postal Service has exercised its "general powers" and has promulgated rules and regulations of its own. Of interest in this case is the Domestic Mail Manual ("DMM"). The DMM, incorporated by reference into the Code of Federal Regulations, is a loose-leaf publication published quarterly by the Postal Service that sets forth the standard operating procedure for the Postal Service. 39 C.F.R. § 111.1–111.5 (1993). On the dates in question, Issue 32 of the DMM was in effect. Section 121.344 addresses banding of packages:

> **121.344 Banding.** When banding is used for closure and reinforcement, it should encircle the length and girth of the package at least once. Although it is *preferred that twine and cord not be used* for closure and reinforcement, *if used*, they should be at least 20–pound tensile strength and must be secured at an intersection at least once on each side. Strapping includes both metal and nonmetallic banding and pressure-sensitive filament tape. Loose strapping, especially metal, is not acceptable because it constitutes a hazard to employees and equipment and does not reinforce the container. It is preferred that flat steel strapping have smooth or plastic-coated edges.

DMM, Issue 32, effective September 17, 1989 (emphasis added).

The Plaintiffs challenge as negligent the Postal Service's acceptance of a package enclosed with string. Reading the Complaint in the light most favorable to the Plaintiff, the allegations would be that the DMM sets forth a "fixed or readily ascertainable standard" that prohibits Postal Service employees from accepting packages enclosed with string, that this standard does not allow for discretion on the part of Postal Service employees, that a Postal Service employee was negligent in failing to adhere to this standard, and that, therefore, the discretionary function exception does not apply. The Court cannot agree.

The DMM provision in question, on its face, does not set forth a "fixed or readily ascertainable standard" that dictates the conduct of postal employees regarding accep-

tance of banded packages. The provision regarding reinforcement with string is stated as a preference, not a mandate. Furthermore, this provision does not prohibit Postal Service employee from accepting packages reinforced with string. In fact, the language "if used" demonstrates that packages enclosed with string can be accepted. Moreover, a plain reading of the statute indicates that Postal Service employees must exercise judgment in deciding whether to accept a banded package. Thus, the challenged conduct involves "an element of judgment or choice" and, therefore, with regard to the challenged conduct of accepting a package enclosed with string, the first prong of the discretionary function exception inquiry is satisfied.

Additionally, reading the Complaint expansively, the Plaintiffs also challenge the failure of the Postal Service to eject the package in question before it was delivered on the grounds that it was "undesirable, harmful, and dangerous," "improperly packaged," and "packaged in a way that could harm employees, equipment and/or other mail." (Compl. at ¶¶ 5–8.) This challenged conduct is similar to the acceptance of the package challenged above in that it also involves judgment on the part of the postal employee. The standards of proper packaging are not specifically enumerated. Instead, the regulations allow the Postal Service employee to use his or her judgment in that regard. Since the challenged conduct involves "an element of judgment or choice," it is deemed discretionary. Thus, with regard to the remaining challenged conduct, the first prong of the discretionary function exception inquiry is also satisfied.

### 2. The judgment exercised is of the kind that the discretionary function exception was designed to shield.

Once it is determined that the challenged conduct "involves an element of judgment," the Court must determine "whether that judgment is of the kind that the discretionary function exception was designed to shield." *Gaubert,* 499 U.S. at 332, 111 S.Ct. at 1278 (citations omitted). The Supreme Court has explained that the discretionary function exception was designed to "prevent

judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy ... [and thus,] when properly construed, the exception 'protects only governmental actions and decisions based on considerations of public policy." *Id.* at 323, 111 S.Ct. at 1274 (quoting *Berkovitz,* 486 U.S. at 537, 108 S.Ct. at 1959). Thus, the Court must determine whether the challenged conduct is "'susceptible to policy analysis.'" *Powers,* 996 F.2d at 1125 (citations omitted).

"When established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in [the same] policy [which led to the promulgation of the regulation] when exercising that discretion." *Gaubert,* 499 U.S. at 324, 111 S.Ct. at 1274. Moreover, where a statute or regulation leaves conduct to the discretion of a Government agent, the plaintiff, to survive a motion to dismiss, "must allege facts [in the Complaint] which would support a finding that the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime." *Id.* at 324–25, 111 S.Ct. at 1275.

In enacting the statutes regarding the Postal Service, Congress defined the Service's mission and empowered it with broad discretion to develop policies and rules of operation to meet that mission. *See, supra* at pages 804–805. Furthermore, the Postal Service has promulgated rules and standards of operation for its employees to follow. In the areas of the acceptance of banded packages and the ejection of packages from the postal process, however, these regulations allow postal employees broad discretion to exercise their judgment. Thus, since the Postal Services' policy allows their agents to exercise discretion, "it must be presumed that the agent's acts are grounded in [the same] policy [which led to the promulgation of the regulation] when exercising that discretion." *Gaubert,* 499 U.S. at 324, 111 S.Ct. at 1274.

Moreover, presumptions aside, the discretion at issue is necessary to the accomplishment of the Postal Service's mission—the

provision of efficient and effective postal services. This discretion is based in policy and designed to further the policy considerations of the Postal Service. This is the very type of discretion that the discretionary function exception is designed to shield. Therefore, the second prong of the discretionary function exception is satisfied. The Court concludes that the challenged conduct falls within the discretionary function exception. Thus, the Court lacks subject matter jurisdiction over this case. Accordingly, the Defendant's motion to dismiss is **GRANTED.**

## CONCLUSION

The Court has analyzed this case under both the "negligent delivery of postal matter" and the discretionary function exceptions to the FTCA and has concluded that this case falls within both of these exceptions. The Court therefore lacks subject matter jurisdiction to hear this case. Accordingly, the Defendant's motion to dismiss is **GRANTED.**

SO ORDERED.