CHARLIE AUTO SALES, INC.,
et al., Plaintiffs,

v.

UNITED STATES of America,
et al., Defendants.

No. CIV. 96–2359(HL).

United States District Court,
D. Puerto Rico.

July 27, 1999.

Jose Garcia–Noya, Pinto–Lugo & Rivera, San Juan, PR, for Charlie Auto Sales Inc., Charlie La–Costa–Sampedro, Elba I. Gotay–Guzman, Conjugal Partnership La Costa–Gotay, Marcos La–Costa–Martinez, Angela Balado–Cintron, plaintiffs.

Guillermo A. Gil–Bonar, U.S. Attorney's Office District of P.R., Criminal Division, Hato Rey, PR, James G. Touhey, Trial Attorney, U.S. Dept of Justice Torts Branch, Civil Division, Washington, DC, for USA, United States Postal Service, ABC Insurance Co., defendants.

## OPINION AND ORDER

LAFFITTE, Chief Judge.

Before the Court is defendant United States of America's ("United States") Motion to Dismiss for Lack of Subject Matter Jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1).[1] For the following reasons, the Court grants defendant's motion.

## BACKGROUND

On April 28, 1994, the United States Postal Services ("the Postal Service") delivered an express mail envelope to Charlie Auto Sales, Inc. The envelope contained a mail bomb which exploded when an em-

---

1. Dkt. no. 4, supplemented by Dkt. nos. 8, 11 & 12. The Court also considers plaintiffs' brief opposition filed on March 26, 1997. Dkt. no. 7.

ployee who is not a plaintiff in this case opened the envelope.[2] The explosion seriously injured plaintiffs Angela Balado and Marcos La Costa Martinez and caused property damage.[3]

On November 14, 1996 plaintiffs brought this action seeking damages under the Federal Tort Claims Act ("FTCA"). Plaintiffs claim that the Postal Service was negligent in failing to observe a minimum degree of security. Specifically, plaintiffs allege that the Postal Service failed to examine the envelope which contained the bomb, and to maintain a working bomb detector capable of screening the envelope.[4]

■ Defendant United States alleges immunity under the discretionary function exception to the FTCA's waiver of sovereign immunity for tort claims against the United States.[5] 28 U.S.C. § 2680(a). Because § 2680(a) is a limitation on the waiver of sovereign immunity, cases which fall within the discretionary function exception must be dismissed for lack of subject matter jurisdiction. *Attallah v. United States*, 955 F.2d 776, 783 (1st Cir.1992). Thus, defendant brings its motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. In deciding a 12(b)(1) motion, a court must construe the complaint liberally, treat all well-pleaded facts as true, and indulge all reasonable inferences in the plaintiff's favor. *Aversa v. United States*, 99 F.3d 1200, 1209–10 (1st Cir.1996). The plaintiff has the burden of establishing subject matter jurisdiction. *Viqueira v. First Bank*, 140 F.3d 12, 16 (1st Cir.1998).

## DISCUSSION

The Federal Tort Claims Act is a broad waiver of sovereign immunity, making the Federal Government liable for certain torts of federal employees acting within the scope of their employment. 28 U.S.C. 1346(b). "The Act did not waive the sovereign immunity of the United States in all respects, however; Congress was careful to except from the Act's broad waiver of immunity several important classes of tort claims." *United States v. Varig Airlines*, 467 U.S. 797, 808, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984). One exception relates to claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). This exception is intended to "prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *Varig Airlines*, 467 U.S. at 814, 104 S.Ct. 2755.

■ To determine whether conduct falls within the discretionary function exception, the court must use a two-step analysis. *United States v. Gaubert*, 499 U.S. 315, 322, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991); *Varig Airlines*, 467 U.S. 797, 813, 104 S.Ct. 2755, 81 L.Ed.2d 660,; *Shansky v. United States*, 164 F.3d 688, 691 (1st Cir.1999); *Irving v. United States*, 162 F.3d 154, 162 (1st Cir.1998). First, the court must determine if the challenged act involved an element of judgment or choice. *Gaubert*, 499 U.S. at 322, 111 S.Ct. 1267. "The requirement of judgment or choice is

---

2. Dkt. no. 1, pg. 3.

3. *Id.*

4. Dkt. no. 1, pg. 4.

5. Defendant also claims immunity under the postal matter exception to the FTCA. 28 U.S.C. § 2680(b). Since plaintiffs' claim is squarely covered under the discretionary function exception, and there is consequently

no subject matter jurisdiction, the Court only notes in passing that the postal matter exception would be an alternative ground for dismissal. That exception provides that FTCA liability does not extend to "[a]ny claim arising out of the loss, miscarriage, or negligent transmission of letters or postal matter." 28 U.S.C. § 2680(b); *Robinson v. United States*, 849 F.Supp. 799, 801 (S.D.Ga.1994).

not satisfied if a 'federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow,' because 'the employee has no rightful option but to adhere to the directive.'" *Id.* (quoting *Berkovitz v. United States,* 486 U.S. 531, 536, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988)). However, if the act involved an element of judgment, then the court must ascertain if the action or decision was based on considerations of public policy. *Id.*

■ In order to determine if the Postal Service exercised an element of judgment or choice, the Court must begin with an examination of the applicable statutes and regulations. The general policy of the Postal Service is statutorily set forth:

> The Postal Service shall have as its basic function the obligation to provide postal services to bind the Nation together through the personal, educational, literary, and business correspondence of the people. It shall provide prompt, reliable and efficient services to patrons in all areas and shall render postal services to all communities.

39 U.S.C. § 101(a). In order to most efficiently and effectively achieve these goals, Congress has provided the Postal Service with considerable discretion. The Postal Service has "general powers" to "adopt, amend, and repeal such rules and regulations as it deems necessary to accomplish the objectives of this title." 39 U.S.C. § 401(2). In accordance with these powers, the Postal Service has effected its own rules and regulations pertaining to mail security. At the time the challenged actions took place, these regulations were set forth in Issue 47 of the Domestic Mail Manual (DMM), dated April 1994, and in the Administrative Support Manual (ASM). The relevant regulations pertaining to mail security are set forth in the guidelines for handling mail reasonably suspected to be dangerous:

**274.41 Screening of Mail.** When the chief postal inspector determines that there is a credible threat that certain mail may contain a bomb, explosives, or other material that would endanger life or property, the chief postal inspector **may** ... authorize the screening of such mail **by any means capable** of identifying explosives, or other dangerous contents in the mails. The screening must be within the limits of this subsection and without opening mail that is sealed against inspection or revealing the contents of correspondence within mail that is sealed against inspection. The screening is conducted according to these requirements:

  a. Screening of mail authorized by this subsection must be limited to the least quantity of mail necessary to respond to the threat.

  b. Such screening must be done in a manner that does not avoidably delay the screened mail.

  c. The chief postal inspector may authorize screening of mail by postal employees and by persons not employed by the Postal Service under such instructions that require compliance with this part and protect the security of the mail. No information obtained from such screening may be disclosed unless authorized by this part.

  . . . .

ASM Part 274.41, revising DMM G012 (emphasis added).

Thus, whether or not mail is to be screened for possible explosives is left to the judgment and discretion of the postal inspector. Mass screening is not required by any postal regulation, and plaintiffs do not argue that there was any reason why the envelope which exploded should have triggered the limited screening provided by postal regulations.[6]

Plaintiffs' argument that the Postal Service should be held liable because the

---

**6.** Nevertheless, even if plaintiff had argued that the envelope had clearly posed a threat, screening is still not mandatory, and is left to the judgment of the postal inspector.

bomb detector on the premises was not functioning for several months prior to the incident is unavailing. Even if the postal inspector had decided to screen the envelope, the means by which he accomplished this end are completely at his discretion. No statute or regulation requires that each post office be equipped with a functioning bomb detector. The inspector is free to utilize any technology available, whether or not on the premises. Consequently, the first prong of the test for the discretionary function exception is satisfied since the Postal Service employees' failure to screen the envelope with a bomb detector was an action clearly subject to the employees' judgment and choice.

The second prong of the test, whether the judgment exercised was grounded in public policy, requires a deeper examination of the Postal Service regulations. Initiated in 1990, these regulations left the limited screening of potentially threatening mail to the discretion of the postal inspector. When the regulation was proposed, the Postal Service's invitation for comment explained in detail the competing policy concerns which lead to this highly limited and discretionary screening of mail for bombs:

> Practical and legal constraints limit our ability to ensure that the mails are free of all dangerous devices and the rule under consideration would enhance our present security procedures. During the postal fiscal year which ended on September 30, 1989, the Postal Service carried 161.6 billion pieces of mail. To examine such quantities of mail, with equipment based on current technology for detecting explosives, would involve significantly increased costs and delays in mail service.

> Since the earliest days of mail service in the United States, mail generally has not been subject to government surveillance. This principle derives from several sources: Constitutional protection accorded by the First Amendment to speech and other forms of expression, and by the Fourth Amendment to persons, papers and effects; federal criminal statutes generally prohibiting opening, detaining, obstructing, or delaying mail (18 U.S.C. §§ 1701–1703, 1708–1709); ... and Postal Service regulations regarding mail security and the classification of mail as sealed against inspection.

> . . . .

> Taking these legal constraints into account, the rule would authorize the least intrusive, least dilatory response to credible situations where human life is threatened. It would attempt to balance the need to protect personal safety in threatening situations against the need to protect personal privacy in the use of the mails. . . .

> For security reasons and because explosive detection technology is developing, the rule would not particularize the screening methods which may be used. Instead, it would disallow use of any screening method which is capable of making a maximum intrusion into mail sealed against inspection.

55 Fed.Reg. at 29638. The Postal Service regulations which grant postal employees discretion in screening mail for explosives are clearly a product of the type of "legislative and administrative decisions grounded in social, economic and political policy," which should be protected from "judicial 'second-guessing'." *Gaubert*, 499 U.S. at 323, 111 S.Ct. 1267. Furthermore, "[w]hen established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in [the same] policy [which led to the promulgation of the regulation] when exercising that discretion." *Id.* at 324, 111 S.Ct. 1267. Consequently, the Court concludes that the challenged conduct was clearly a decision involving a choice, and that the choice was the type

which the discretionary function exception was intended to protect.[7]

WHEREFORE, the Court hereby grants defendant United States of America's Motion to Dismiss (Dkt. no. 4). Judgment shall be entered dismissing this claim.

**IT IS SO ORDERED.**

---

**7.** *See Gager v. United States,* 149 F.3d 918 (9th Cir.1998) (finding discretionary function exception protected alleged negligent training practices of Postal Service employees in bomb detection); *Robinson v. United States,* 849 F.Supp. 799 (S.D.Ga.1994) (discretionary function exception applied to Postal Service regulations concerning acceptance of packages for delivery).